**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 25-45-DLB-CJS**

**TRACI DEPEW HUGHES,**                                                                                    **PLAINTIFF**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**CERTIFIED FLOORING INSTALLATION, INC.,**                                              **DEFENDANT**

*** *** *** ***

This matter comes before the Court upon Defendant Certified Flooring Installation, Inc.'s ("CFI") Motion to Dismiss Plaintiff Traci Depew Hughes's Amended Complaint. (Doc. # 14). Plaintiff having filed her Response in Opposition (Doc. # 15), and Defendant having filed its Reply (Doc. # 16), the Motion is ripe for review. For the following reasons, Defendant's Motion to Dismiss is **granted in part and denied in part**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Between June 8, 2020 and February 22, 2024, Traci Depew Hughes worked for CFI out of its Hebron, Kentucky office.[1] (Doc. # 7 ¶¶ 7-8). Although Hughes had been in recovery for several years when she began work at CFI, she had previously struggled with alcohol abuse. (*Id.* ¶ 10). During that period, Hughes had trouble engaging in several daily activities such as concentrating, sleeping, working, and taking care of herself. (*Id.*). Indeed, Hughes's alcoholism exerted such a negative impact on her daily functioning that she sought and received treatment for alcohol addiction. (*Id.* ¶ 11).

---

[1] Given the present procedural context, the factual summary that follows is taken from the Plaintiff's Amended Complaint (Doc. # 7) and construed in her favor. *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal citations omitted).

1

Although Hughes is nineteen years sober, her alcoholism continues to impact her life in significant ways. (*Id.* ¶ 14). Specifically, maintaining her sobriety requires avoiding exposure to environments where alcohol is "consumed, displayed, or encouraged." (*Id.* ¶ 15). Such exposure presents a substantial risk of relapse and would significantly impair her ability to "function, concentrate, and maintain her recovery." (*Id.*). Hughes alleges that this precaution is not a matter of personal preference, but a "clinical necessity." (*Id.* ¶ 16). Despite the steps Hughes took to maintain her sobriety, her performance as an employee of CFI did not suffer. (*Id.* ¶¶ 25-26). During her employment at CFI, Hughes received positive performance reviews, never received a reprimand and, in May of 2023, earned a promotion. (*Id.*).

Hughes's recovery was no secret in the CFI office. (*Id.* ¶ 19). CFI was "well aware" of Hughes's recovery and Hughes freely discussed her sobriety with her peers. (*Id.* ¶¶ 18-19). When CFI began to host occasional "wine and cheese" events at the office to wind down the workday, Hughes had to make arrangements to leave the office early to avoid exposure to alcohol. (*Id.* ¶¶ 20-22). This created tension between Hughes and her coworkers, who taunted her for not participating in the events. (*Id.* ¶ 23).

In November of 2023, Hughes learned that CFI's offices would be relocating from Hebron, Kentucky to Newport, Kentucky. (*Id.* ¶ 27). CFI's new office in Newport sat across the street from a liquor store and above a popular bar. (*Id.* ¶ 28). Because working in that environment would involve consistent exposure to alcohol, Hughes realized that she would need to work from home. (*Id.* ¶ 30). Hughes could perform all of the essential functions of her job remotely and had worked from home in the past. (*Id.* ¶ 32). Other employees holding similar positions at CFI worked remotely and CFI's infrastructure

2

allowed for Hughes to work from home. (*Id.* ¶ 33). So, Hughes requested to work remotely due to her alcoholism on or about January 2, 2024. (*Id.* ¶ 31).

In the wake of her accommodation request, Hughes experienced ostracization and exclusion at the CFI office. (*Id.* ¶ 35). Hughes was excluded from meetings, left out of communications, and the subject of water cooler gossip about her alcoholism and request for accommodation. (*Id.* ¶¶ 36-37). Around January 25, 2024, Hughes repeated her accommodation request and provided CFI with letters from her health care provider and her Sponsor. (*Id.* ¶ 39). These letters outlined the threat to Hughes's sobriety posed by working at CFI's new location. (*Id.* ¶ 40). In February of 2024, Hughes proposed an alternative accommodation whereby she would alter her working hours to avoid the bar's hours of operation. (*Id.* ¶ 41). Without granting any of Hughes's requests, on February 21, 2024, CFI informed her that she would have to submit her accommodation request on her health care provider's formal letterhead. (*Id.* ¶ 43). When Hughes submitted such a request the next day, she was fired. (*Id.* ¶¶ 44-45).

Although CFI originally informed Hughes that she was terminated because her services were no longer required, weeks later, CFI claimed that Hughes was fired because she used vulgar gestures and language toward CFI's CEO. (*Id.* ¶¶ 46-47). Hughes denies this allegation and asserts that it provides a "blatant pretext . . . to conceal [CFI's] obvious discriminatory and retaliatory motives." (*Id.* ¶ 49). In light of these events, Hughes filed a Charge of Discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue within ninety days of the filing of this Action. (*Id.* ¶ 50).

3

Hughes filed her initial complaint on March 24, 2025.  (Doc. # 1).  In her Original Complaint, Hughes brought two claims: one for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(a) ("ADA") and one for violation of the Kentucky Civil Rights Act, KRS Chapter 344 ("KCRA").  (*Id.* ¶¶ 36-45).  CFI moved to dismiss the Original Complaint on April 16, 2025.  (Doc. # 6).  Hughes filed an Amended Complaint on June 6, 2025 asserting the same claims for relief.  (Doc. # 7 ¶¶ 51-72).  CFI filed the instant Motion to Dismiss Plaintiff's Amended Complaint on June 20, 2025 arguing that Hughes has failed to state a claim under either statute.  (Doc. # 14).  Hughes responded (Doc. # 15), CFI replied (Doc. # 16), and the Motion is ripe for review.

**II.    STANDARD OF REVIEW**

The Federal Rules of Civil Procedure dictate that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  When faced with such a motion to dismiss, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quotations omitted).  Likewise, the Court need not accept legal conclusions couched as facts or the bare recitation of the elements of a cause of action.  *Inner City Contracting, LLC v. Charter Twp. of Northville, MI*, 87 F.4th 743, 754 (6th Cir. 2023).  Rather, a plaintiff must allege facts such that the Court could reasonably

4

infer that the defendant is "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Evaluating a complaint for facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    ANALYSIS

CFI argues that Hughes's ADA and KCRA claims should be dismissed because: (1) Hughes has not sufficiently pled a disability under the ADA (Doc. # 14 at 7) and (2) she has not sufficiently pled a disability under the KCRA.  (*Id.* at 9).  For the reasons that follow, the Court disagrees with CFI regarding Plaintiff's ADA claim, but agrees with CFI that Hughes fails to state a claim under the KCRA.

### A. Plaintiff states a claim under the Americans with Disabilities Act.

The ADA prohibits covered employers from discriminating against an employee "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Thus, to state a claim under the ADA, Plaintiff must allege facts that support a reasonable inference that she (1) is disabled, (2) is otherwise qualified to perform the essential functions of her position, with or without accommodation, and (3) suffered an adverse employment action because of her disability.  *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014); *see also Maxson v. Baldwin*, 964 F.3d 440, 444 (6th Cir. 2020) (holding that, at the motion to dismiss stage, courts must "consider whether the complaint states a claim for relief that is plausible, when measured against the elements of an ADA claim.").  In its Motion to Dismiss, CFI urges the Court to

dismiss Plaintiff's Amended Complaint because it fails to "sufficiently [plead] factual allegations to plausibly conclude she is a person with a disability as defined by the ADA." (Doc. # 14 at 8).

### 1. Plaintiff plausibly alleges that her alcoholism constitutes a disability under the ADA.

A "disability," for ADA purposes, includes "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment…" 42 U.S.C. § 12102(1). In 2008, Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), which amended the ADA and broadened the definition of "disability." *Milholland v. Sumner Cnty. Bd. Of Educ.*, 569 F.3d 562, 566 (6th Cir. 2009).

The ADAAA provides a non-exhaustive list of what constitutes a "major life activity". 42 U.S.C. § 12102(2). This list includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A) "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." *Id.* § 12102(4)(E). Accordingly, "[t]he definition of disability…shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4). Further, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D).

Hughes contends that her alcoholism constitutes a disability under the ADA. First, she maintains that her condition, when active, "substantially limited multiple major life

6

activities, including her ability to think clearly, concentrate, maintain regular sleep, work, and care for herself." (Doc. # 7 ¶ 54). Due to this negative impact on her life, Hughes alleges that she "sought and received treatment for alcohol addiction" and has "dedicated the last nineteen years of [her] life to her recovery and treatment." (*Id.* ¶¶ 11, 13).

Alternatively, Hughes argues that, even in remission, her alcoholism is still a disability. (*Id.* ¶ 56). She states that her alcoholism continues to substantially limit major life activities even after years of sobriety. (*Id.* ¶ 15). Specifically, Hughes alleges that maintaining sobriety "requires her to often avoid environments where alcohol is being consumed, displayed, or encouraged, as exposure to such environments presents a substantial risk of relapse." (*Id.*). Plaintiff Hughes alleges that such precautions are "not a matter of personal preference but a clinical necessity" to which her doctor and her sponsor of nineteen years attest. (*Id.* ¶¶ 16, 39-40).

CFI, for its part, disputes Hughes's allegations that her alcoholism substantially limits a major life activity. (Doc. # 14 at 8). In its Motion to Dismiss, CFI argues that Hughes's status as a recovering alcoholic does not render her "disabled" under the ADA's definition. (*Id.* at 5). CFI observes that "[a]ny period where Hughes was actively suffering from alcoholism ended 14 years prior to when her employment with CFI began in 2020." (*Id.* (citing Doc. # 7 at 2)). Because Hughes was sober during her tenure with CFI, Defendant argues that her alcoholism "did not affect any major life activities anytime during her employment [with CFI]." (*Id.*). Furthermore, CFI contends that Hughes fails to allege a disability in the form of her prior alcohol abuse because she provides insufficient "self-serving, conclusory statements that [her] drug or alcohol use – almost two decades ago – substantially limits her ability to perform a major life activity today." (*Id.* at 6).

7

### a. Hughes's alcoholism, when active, constitutes a disability.

Federal courts routinely find that "alcoholism can qualify as a disability under the ADA." *Adkins v. Excel Mining, LLC*, 214 F. Supp. 3d 617, 622 (E.D. Ky. 2016) (citing *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180 (6th Cir. 1997)); *see also Blazek v. City of Lakewood, Ohio*, 476 F. App'x 512, 516 (6th Cir. 2014) ("Alcoholism can constitute a disability under the ADA.") (citation omitted). However, while the ADA "'protects an individual's status as an alcoholic,' merely being an alcoholic does not insulate one from the consequences of one's actions." *Mararri*, 130 F.3d at 1182 (quoting *Flynn v. Raytheon*, 868 F. Supp. 383, 387 (D. Mass. 1994)). Alcoholism constitutes a "physical or mental impairment." 42 U.S.C. § 12102(1). Whether it constitutes an ADA disability depends on whether, in specific circumstances, it "substantially limits" a major life activity. (*Id.*).

In the wake of the ADAAA, Hughes has sufficiently alleged that she is disabled. The fact that Hughes's alcoholism was in remission when she worked for CFI makes no difference to the ADA's disability inquiry. *See Hostettler v. College of Wooster*, 895 F.3d 844, 854 (6th Cir. 2018) (holding that episodic attacks of postpartum depression and separation anxiety constitute an ADA disability where the plaintiff would be substantially limited in a major life activity during such an attack). Here, Hughes alleges that, although she has enjoyed more than nineteen years of sobriety, her alcoholism, when active, substantially limits several major life activities. (Doc. # 7 ¶ 10). These include her ability to "think clearly, concentrate, maintain regular sleep, work, and care for herself." (*Id.*). Indeed, Hughes alleges that her alcoholism so impacted her ability to function that she sought and received treatment for her addiction. (*Id.* ¶¶ 11, 13). CFI asserts that

8

"Hughes' alcoholism cannot and did not . . .affect any major life activities during her employment since she concedes her alcoholism was not active for over a decade before she was hired." (Doc. #16 at 2). However, that assertion improperly frames the issue. As discussed above, whether Hughes's alcoholism was "active" during her employment with CFI is beside the point. The proper question is whether Hughes plausibly alleged that her alcoholism—*when active*—substantially limits a major life activity. The allegations contained in the Amended Complaint meet this standard. Accordingly, Hughes adequately alleged that her alcoholism constitutes a disability under the ADA.

### b. Hughes's alcoholism, when inactive, constitutes a disability.

In addition to her allegations that her "active" alcoholism constitutes a disability under the ADA, Hughes states that she is disabled due to her "status as a recovering addict." (Doc. # 7 ¶ 14). Hughes alleges that, because she is a recovering alcoholic, she must take certain precautions to avoid a relapse. (*Id.* ¶ 15). These include avoiding "environments where alcohol is being consumed, displayed, or encouraged." (*Id.*). For example, Hughes alleges that when CFI began to hold occasional "wine and cheese" events during work hours, she was forced to leave the office early whenever such events occurred. (*Id.* ¶¶ 20-22). Further, Hughes alleges that her inability to participate in these events due to her disability created a fractious relationship with her coworkers. (*Id.* ¶¶ 22-23). The degradation of these relationships ultimately led to Hughes's exclusion from meetings, communications, and group functions. (*Id.* ¶¶ 35-36). Accordingly, Hughes maintains that her alcoholism "continues to substantially limit one or more major life activities, including, but not limited to, caring for herself, eating, sleeping, concentrating, and interacting with others." (*Id.* ¶ 56).

Once again, CFI takes issue with these allegations. CFI argues that "Plaintiff simply reiterated the definition of a major life activity set forth in 29 C.F.R. § 1613.702(c)[2] rather than providing any factual allegation to support [the conclusion that her inactive alcoholism substantially limits a major life activity]." (Doc. # 14 at 7). In its Motion to Dismiss, CFI cites several district court decisions granting a defendant's motion for summary judgment in ADA discrimination cases brought by a recovering alcoholic. (*Id.* (citing *Marvin v. Dakota Rests., Inc.*, No. 08-14030, 2009 WL 4068576, at *8-10 (E.D. Mich. Nov. 23, 2009) (citation omitted) and *Roig v. Miami Fed. Credit Union*, 353 F. Supp. 2d 1213, 1216 (S.D. Fla. 2005)). However, these cases employed the evidentiary standard appropriate for a motion pursuant to Rule 56. *Marvin*, 2009 WL 4068576, at *3 (noting that the plaintiff failed to "provide evidence…that his alcoholism '*substantially limited*' one or more of his major life activities"); *Roig*, 353 F. Supp. 2d at 1216 (granting the defendant's motion for summary judgment because the "Plaintiff fail[ed] to present sufficient evidence to pass an individualized assessment in his case").

However, this case remains at the pleading stage. Therefore, Hughes need not "establish" anything by offering evidence. Rather, Hughes only needs to meet the plausibility standard established in *Twombly* and *Iqbal*. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). The Court is persuaded that it can "draw the necessary inference[s] from the factual material stated in the complaint" to find that Hughes has plausibly alleged that her alcoholism continued to substantially limit at least one major life activity during her employment. *Id.* CFI argues that the Amended Complaint relies on

---

[2] Although CFI cites to "29 C.F.R. § 1613.702(c)" in its Motion to Dismiss (Doc. # 14), the definition of "Major life activities" is set forth in 29 C.F.R. § 1630.2(i). That provision states in relevant part that major life activities "include, but are not limited to . . .cconcentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i).

10

"conclusory restatements" that Plaintiff's "19-years of sobriety substantially limited a major life activity during her employment." (Doc. # 14 at 6). Not so. Hughes alleges particular facts that form the basis of her claim. For example, Hughes alleges that when she rearranged her work schedule to avoid being in the office during one of CFI's "wine and cheese" events, her coworkers taunted her and mocked her sobriety. (*Id.*) ¶¶ 22-24. These facts, informed by the Court's "judicial experience and common sense," allow the Court to "draw the reasonable inference" that Hughes's alcoholism substantially limited her ability to interact with her coworkers at CFI. *Iqbal*, 556 U.S. at 678, 679. And because Hughes's alcoholism need only "substantially limit[] one or more major life activities," that is enough. 42 U.S.C. § 12102(1).

### c. CFI regarded Hughes as disabled

Finally, Hughes claims disability under the ADA on the grounds that CFI regarded her as disabled. "Being regarded as having [a physical or mental impairment that substantially limits one or more major life activities]" is one of three ways an individual may have a "disability" under the ADA. 42 U.S.C. § 12102(1). An employer regards an employee as disabled when it "'regard[s] her as having a physical or mental impairment that substantially limited one or more of her major life activities' and that the impairment was one with a duration of more than six months." *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (quoting *Watts v. United Parcel Serv.*, 378 Fed. App'x. 520, 525 (6th Cir. 2020)). To establish that she was regarded as disabled, Hughes must show that "she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment *whether or not the*

11

*impairment limits or is perceived to limit a major life activity.*"  *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (quoting 42 U.S.C. § 12102(3)(A)).

Here, Hughes asserts that the Amended Complaint "alleges that Defendant mistakenly believed that her condition rendered her unfit for the workplace" when, in fact, it did not.  (Doc. # 15 at 7).  Hughes alleges that CFI "was well aware" of her disability.  (Doc. # 7 ¶ 19).  Indeed, Hughes alleges that her status as a recovering alcoholic—and the steps she took to maintain her sobriety—were public knowledge in the CFI office.  (*See Id.* ¶ 23 (discussing her coworkers' taunts in response to Hughes's decision to exclude herself from CFI's "wine and cheese" events)).  Further, Hughes alleges that, upon learning of CFI's new office location, she requested permission to work remotely on January 2, 2024—more than a month prior to her termination.  (*Id.* ¶ 31).  Hughes alleges that she repeated this request on January 25, 2025 and provided CFI with letters from her health care provider and her Sponsor.  (*Id.* ¶ 39).  According to Hughes, these letters "outlined the detrimental effects that working at the new location would have on [her] continued sobriety, given the consistent exposure to alcohol that she would have to endure."  (*Id.* ¶ 40).  The Amended Complaint also alleges that on February 21, 2024 CFI required Hughes to re-submit her accommodation request on her health care provider's formal letterhead.  (*Id.* ¶ 43).  In response to her resubmission, Hughes alleges, CFI terminated her employment.  (*Id.* ¶ 45).  Thus, Hughes has alleged that CFI was aware of her alcoholism and the manner in which it impacted her life and work and that CFI terminated her employment as a result.  (*See Id.* ¶ 49 (alleging that CFI's "discriminatory and retaliatory motives" led to her termination)).  At the pleading stage, these allegations allow the Court to infer that CFI regarded Hughes as disabled.

CFI argues that "[i]t is implausible to regard someone as disabled for a condition Plaintiff affirms did not exist anytime or for any duration, much less six months, during her employment." (Doc. # 16 at 4). However, CFI misconstrues the Amended Complaint. As previously discussed, (*supra* III(A)(1)(a)-(b)), Hughes alleges facts sufficient to find that CFI regarded her alcoholism as a disability during her employment. CFI asks the Court to dismiss Hughes's ADA claim on the grounds that "[b]eing sober is no more 'regarded as' a disability or impairment any more than being awake would be." (*Id.*). Reading the Amended Complaint in the light most favorable to Hughes, however, the Court cannot accept this framing. Hughes alleges that her status as a recovering alcoholic was common knowledge among CFI and its employees. (Doc. #7 ¶¶ 18-19). The Amended Complaint plausibly alleges that CFI knew of the limitations Hughes's alcoholism placed on her ability to interact with others. (*Id.* ¶¶ 20-24 (describing tension between Hughes and her coworkers arising from her inability to participate in "wine and cheese" events)). Moreover, Hughes alleges that Defendant received multiple letters from her healthcare provider and her Sponsor describing her alcoholism and the limitations it would have on her ability to work. (*Id.* ¶¶ 39-40, 44). Finally, Hughes alleges that she was terminated as a result of her request to accommodate her alcoholism by working remotely or altering her hours. (*Id.* ¶ 61). As alleged, these facts plausibly state a claim that CFI subjected Hughes to an action in violation of the ADA as a result of CFI's perception of Hughes's alcoholism. Accordingly, Hughes has plausibly alleged that CFI regarded her as disabled.

### B. Plaintiff fails to state a claim under the Kentucky Civil Rights Act.

In addition to her ADA claim, Hughes seeks relief for an alleged violation of the KCRA. Because the General Assembly explicitly excludes "current or past. . . alcohol

abuse problems" from the definition of "disability" under the KCRA, Hughes fails to state a plausible claim for relief and the Court dismisses Count II of the Amended Complaint. KRS § 344.010(4).

The KCRA mirrors the ADA in many respects. *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). Accordingly, "claims brought under the KCRA are interpreted consistently with the standards developed under the ADA." *Id.* The KCRA makes it "unlawful for an employer to discharge any individual … because the person is a qualified person with a disability." *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 706 (Ky. Ct. App. 2004) (internal quotation marks omitted). Thus, a KCRA plaintiff must show "(1) that he has a disability; (2) that he was otherwise qualified for his position; and (3) that his employer subjected him to discriminatory treatment solely because of his disability." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). Like the ADA, the KCRA defines "disability" to include "(a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (b) a record of such impairment; or (c) being regarded as having such impairment." *Koch v. Thames Healthcare Group, LLC*, 855 Fed. App'x 254, 258 (6th Cir. 2021) (citing KRS § 344.010(4)).

However, the KCRA departs from the ADA's definition of "disability" in one key respect. The KCRA, unlike the ADA, states that "[p]ersons with current or past controlled substances abuse *or alcohol abuse problems* and persons excluded from coverage by [the ADA]" are excluded from its definition of "disability." KRS § 344.010(4) (emphasis added).

Read plainly, this exclusion applies to two categories of persons: (a) those with current or past controlled substances abuse or alcohol abuse problems, *and* (b) those

14

excluded from coverage under the ADA. So, if a KCRA plaintiff falls into either category, they do not have a qualifying disability. *See Elliott v. Raytheon, Inc.*, No. 3:21-cv-00751-BJB, 2022 WL 3204527, at *4 (W.D. Ky. Aug. 8, 2022) ("For purposes of KRS § 344.010, Elliott's alcoholism is not a qualifying disability and his claim fails on that basis alone.").

Hughes urges the Court to refrain from this reading of the text. (Doc. # 15 at 11). Rather, Hughes argues that "[t]he statute excludes only those (1) with current or past substance [or alcohol] abuse issues **and** (2) who are excluded from ADA protection." (*Id.*). Pursuant to this interpretation, the exclusion only applies to Hughes if she has a current or past alcohol abuse issue *and* she is excluded from ADA protection.

The text of the exclusion simply cannot bear this interpretation. In interpreting the Kentucky law, the Court is "bound by the definition[s] provided in the statute." *Cuthbertson v. Commonwealth*, No. 2024-SC-0148-MR, 2025 WL 2383310, at *4 (Ky. Aug. 14, 2025). Indeed, "[w]hen the General Assembly specifically provides that a word used in a statute shall have a particular meaning, the courts must accept that statutory definition in construing the statute." *Schroader v. Atkins*, 657 S.W.2d 945, 947 (Ky. 1983). In KRS § 344.010(4), the General Assembly has defined "disability" in a manner that deviates from the ADA. This definition applies to "*persons* with current or past . . .alcohol abuse problems and *persons* excluded from coverage by [the ADA]." KRS § 344.010(4) (emphasis added). The repetition of "persons" indicates the creation of two separate excluded classes. It does not, as Hughes suggests, establish two necessary factors that must apply to an individual for the exclusion to apply. Because Hughes alleges that she is disabled under the KCRA solely due to her alcoholism, she fails to state a plausible

15

claim for relief.  Accordingly, she "fails the first prong" of a KCRA claim.  *Elliott*, 2022 WL 3204527, at *4.

Hughes cites to a case from the Western District of Kentucky for the proposition that "alcoholism can qualify as a disability under the KCRA."  *Hartley v. UPS, Inc.*, No. 3:04-cv-543-H, 2006 U.S. Dist. LEXIS 4873, at *5 (W.D. Ky. Feb. 8, 2006) (citing *Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005) (analyzing the ADA)).  However, this decision is non-binding and unpersuasive.  In *Hartley*, a plaintiff brought a cause of action under the KCRA, alleging that her employer unlawfully discriminated against her on the basis of her alcoholism.  However, the *Hartley* court did not address the KCRA's express exclusion of alcoholism from its definition of "disability."  Rather, it noted at the outset that "the KCRA is interpreted consonant with the Americans with Disabilities Act" and proceeded to analyze the plaintiff's claim in light of federal caselaw.  *Id.*, at *5 n.2.  As discussed above, although courts often interpret the KCRA in harmony with the ADA, such interpretation is inappropriate where the text of the KCRA parts ways with that of the ADA.  *Hartley*'s failure to treat or even address the exclusion contained in KRS § 344.010(4) provides little support for Hughes's suggested reading of the KCRA.  Accordingly, the Court will not follow the *Hartley* court's lead.

Conversely, Hughes urges the Court to distinguish her case from *Elliott v. Raytheon*, another case from the Western District of Kentucky, in which a plaintiff's claim was dismissed because "alcoholism is not a qualifying disability" under the KCRA.  2022 WL 3204527, at *4.  Hughes argues that the *Elliott* plaintiff only alleged that "he was disabled due to alcoholism, without alleging facts to show substantial limitation of a major life activity."  (Doc. # 15 at 12).  As a result, Hughes maintains, "*Elliott* does not foreclose

16

the 'regarded as' theory" she advances. (*Id.*). However, this misconstrues the effect of the statutory exclusion. Whether a KCRA plaintiff alleges that she actually suffers from alcoholism or that her employer regards her as suffering from alcoholism is immaterial. Alcoholism is excluded as a qualifying disability in either case. Hughes's KCRA claim is predicated on her alcoholism whether she alleges that she actually suffers from alcoholism or merely that CFI regarded her as suffering from alcoholism. Therefore, she fails to allege a qualifying disability under the KCRA, and her claim must be dismissed.

## IV.  CONCLUSION

Thus, for the reasons set forth herein,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 14) is **GRANTED IN PART** with regard to Plaintiff's KCRA claim**,** and **DENIED IN PART** with regard to Plaintiff's ADA claim. The latter claim may proceed to discovery.

This 7th day of October, 2025



Signed By:
*David L. Bunning*  DB
Chief United States District Judge

"G:\Judge-DLB\DATA\ORDERS\Cov2025\25-45 MOO re MTD.docx"